**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 10-cv-02044-CMA-MJW

UNITED STATES OF AMERICA,

      Plaintiff,

v.

$13,000.00 IN UNITED STATES CURRENCY,
2007 BLACK DODGE RAM SRT PICKUP, VIN 1D7HA18257S120375, and
1999 SILVER GMC YUKON, VIN 1GKEK13R1XR918883,

      Defendants.

---

**ORDER GRANTING GOVERNMENT'S MOTIONS FOR SUMMARY JUDGMENT**

---

This 28 U.S.C. § 881 civil forfeiture case is before the Court on the Motions for

Summary Judgment of Plaintiff, the United States of America (the "Government"), as to

Maria Medina's claim to Defendants $13,000.00 in United States Currency ("$13,000")

and 1999 Silver GMC Yukon ("Yukon") (Doc. # 51) and Victor Mier-Chacon's claim

to Defendant 2007 Black Dodge Ram ("Dodge Ram") (Doc. # 50).  Jurisdiction is

proper under 28 U.S.C. §§ 1345 and 1355.  For the reasons discussed below, the

Government's motions are granted.

## I. <u>BACKGROUND</u>

Following an investigation that spanned several months in 2008 and 2009,

the Colorado Springs Police Department ("CSPD") identified several Mexican nationals

– including Luis Rodriguez ("Rodriguez") and Francisco Javier Resendiz Mier

("Resendiz Mier") – as narcotics dealers.  (Doc. # 1 at 2-3.)  Both men were arrested on

March 17, 2010, and were later charged with drug offenses under state law.  (*Id.* at 6.)

In connection with taking Rodriguez and Resendiz Mier into custody, the CSPD seized

Defendants $13,000 and Dodge Ram "as drug trafficking proceeds," and Defendant

Yukon for "facilitation."  (*Id.* at 5.)[1]  The currency and the Yukon were seized from

Rodriguez's residence where Medina, Rodriguez's mother, was also living.  (*Id.* at 4.)

The CSPD seized the Dodge Ram from Resendiz Mier's residence.  (*Id.* at 5.)

Rodriguez and Resendiz Mier both pled guilty and were deported back to Mexico.

(*Id.* at 6.)

On August 24, 2010, the Government filed its Verified Complaint for Forfeiture

*In Rem*, seeking forfeiture of Defendants $13, 000, Yukon, and Dodge Ram.  (Doc. # 1.)

On October 25, 2010, Medina, Antonio Resendiz Mier, and Mier-Chacon ("Claimants")

filed a claim for Defendants $13,000, Yukon, and Dodge Ram, respectively.  (Doc.

# 12.)  Claimants also filed an Answer (Doc. # 19), and Mier-Chacon filed an Amended

Answer (Doc. # 59), which the Court accepted for good cause shown (Doc. # 69).

On July 29, 2011, the Government filed the instant Motions for Summary

Judgment.  (Doc. ## 50 and 51.)  Medina and Mier-Chacon responded on September

---

[1] Additional facts pertaining to each Defendant will be addressed in the relevant subsections, below.

19, 2011 (Doc. ## 55 and 56),[2] and the Government replied on October 3, 2011 (Doc. ## 73 and 74).

## II. <u>APPLICABLE LAW</u>

### A.   STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Allen v. Muskogee*, 119 F.3d 837, 841 (10th Cir. 1997).  A fact is "material" if, under the pertinent substantive law, it is essential to the proper disposition of the claim. *See, e.g.*, *Wright v. Abbott Labs, Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).

When reviewing a summary judgment motion, the Court views the record, and draws all reasonable inferences therefrom, "in the light most favorable to the party opposing summary judgment." *Lewis v. Circuit City Stores, Inc.*, 500 F.3d 1140, 1146 (10th Cir. 2007).  The movant "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).  If the movant will bear the burden of proof at trial, it must support its motion with sufficient evidence to establish its right to a judgment after trial if the non-

---

[2]  Following Antonio Resendiz Mier's death, Medina had been permitted to take on his claim to Defendant Yukon. (*See* Doc. # 46.)  However, in her Response, and for reasons that are not at issue here, Medina stated that she "concedes the government's motion regarding the Yukon." (Doc. # 55 at 1.)  Accordingly, the Court will grant the Government's Motion for Summary Judgment as to the Yukon without further analysis of that claim.

movant were to fail to rebut the evidence.  *See Anderson v. Dept. of Health & Human Servs.*, 907 F.2d 936, 947 (10th Cir. 1990).  If the movant meets its burden, the non-movant "must demonstrate that there is a genuine factual dispute with regard to some element that the moving party is obligated to prove."  *In re Ribozyme Pharm., Inc. Sec. Litig.*, 209 F. Supp. 2d 1106, 1111 (D. Colo. 2002).  This is done by presenting "sufficient evidence in specific, factual form for a jury to return a verdict" in the non-movant's favor.  *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).

When a court determines "whether a party has met its burden of supporting or opposing summary judgment, the court reviews the evidence in light of the evidentiary standard that would apply at trial, be it a preponderance of the evidence, clear and convincing evidence, or something else."  11 James WM. Moore et al., Moore's Federal Practice § 56.42 (3d ed. 2011).  In other words, the court determines whether a triable issue of fact exists under the "actual quantum and quality of proof" that the parties must meet at trial.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252-54 (1986). Therefore, "in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden."  *Id.* at 254.

## B.   CIVIL FORFEITURES

"A civil forfeiture proceeding is an *in rem* action that proceeds on the legal fiction that the property itself is guilty of wrongdoing."  *United States v. $152,160.00 U.S. Currency*, 680 F. Supp. 354, 356 (D. Colo. 1988).  A criminal conviction is not required

before a civil forfeiture proceeding takes place, but such a proceeding "usually involves property that has been used in, or that is related to, a criminal enterprise." *Id.* The purpose of forfeiture proceedings under § 881 include "removing the incentive to engage in the drug trade by denying drug dealers the proceeds of ill gotten gains, stripping the drug trade of its instrumentalities, including money, and financing Government programs designed to eliminate drug trafficking." *Id.* (citation omitted).

In civil forfeiture actions, the "burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1). Therefore, to satisfy this burden, the Government must show that it is "more probable than not" that the property is subject to forfeiture. *See Concrete Pipe and Prods. of Cal., Inc. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 622 (1993).

### III.  ANALYSIS

For analytical clarity, the Court will address separately the Government's motions for summary judgment as to Defendants $13,000 and Dodge Ram, in subsections A and B, respectively.

### A.  MEDINA'S CLAIM TO DEFENDANT $13,000

The Government contends that Defendant $13,000 "is subject to forfeiture by a preponderance of the evidence as illegal narcotics proceeds and Ms. Medina is not an innocent owner of that currency." (Doc. # 51 at 2.)  For the reasons discussed below, the Court agrees.[3]

---

[3] In her Response, Medina states that "[t]he government is correct in asserting that the innocent-owner defense does not apply as to [her] and her currency." (Doc. # 55 at 4.) Accordingly, the Court will not analyze this aspect of the Government's contention.

Pursuant to 21 U.S.C. § 881(a)(6), all money and other items of value are subject to forfeiture when they are: "(1) furnished or intended to be furnished in exchange for a controlled substance, (2) traceable to a controlled substance exchange, or (3) used or intended to be used to facilitate a violation of the Controlled Substances Act." *United States v. $148,840.00 in U.S. Currency*, 521 F.3d 1268, 1270 (10th Cir. 2008). The Government is not required to connect the currency to "a particular drug transaction." *United States v. $21,055.00 in U.S. Currency*, 778 F. Supp. 2d 1099, 1103 (D. Kan. 2011). Rather, where, as here, the Government's theory is that the currency is the proceeds of drug trafficking, "the government need only trace the currency to drug trafficking generally . . . ." *Id.* at 1104. Further, in "evaluating the evidence of proceeds traceable to drug transactions," the court "eschew[s] clinical detachment and endorse[s] a common sense view to the realities of normal life applied to the totality of the circumstances." *United States v. $242,484.00*, 389 F.3d 1149, 1160 (11th Cir. 2004) (quotation marks and citation omitted).

In the instant case, Medina stated during discovery that she had saved Defendant $13,000 since 2003 from her employment and that she kept the money at home because she lacked identification to open a bank account and wanted the money nearby in case of an emergency. (Doc. # 51-4 at 5; *see also* Doc. # 55-1 (Medina affidavit).) During her deposition, she stated that she earned between $300 and $600 every two weeks. (Doc. # 51-2 at 2.) She also averred that she kept the money wrapped together with "rubber bands around it," inside of a latex "rubbery bag," inside of a larger "black bag," inside of "two pillowcases," inside of a "shelf arrangement" in her

bedroom closet.  (*Id.* at 7-8.)  Medina testified that when she was paid she would undo

the five layers of protection around the money, add to it, and then re-wrap it.  (*Id.* at 9.)

Although not conclusive, the mere existence of such a large amount of cash in

the context of a drug bust is "strong evidence that the money was furnished or intended

to be furnished in return for drugs."  *See United States v. Currency, U.S. $42,500.00*,

283 F.3d 977, 981 (9th Cir. 2002).  *Accord United States v. $252,300.00 in U.S.*

*Currency*, 484 F.3d 1271, 1275 (10th Cir. 2007); *United States v. $6,360.00 in U.S.*

*Currency*, No. 8:07CV492, 2009 WL 2824778, at *4 (D. Neb. Aug. 28, 2009)

(unpublished); *United States v. $14,600 in United States Currency*, No. 8:05CV295,

2006 WL 1041796, at *4 (D. Neb. April 18, 2006) (unpublished); *United States v.*

*Approximately $2,758.00 in U.S. Currency*, No. 07-C-491, 2008 WL 2367427, at *4

(E.D. Wis. June 9, 2008) (unpublished).  The Court rejects Medina's argument that

$13,000 is not a sufficiently large sum to constitute "strong evidence" of having come

from one or more drug transactions.  The amounts at issue in two of the above-cited

cases – *i.e.*, $6,360 and $2,758, as indicated in the case names – betray Medina's

position.

Further, the way the currency was packaged, specifically in a latex "rubbery bag,"

is highly suggestive of the money having been drug proceeds.  Unlike a purse, bag, or

box, a latex "rubbery bag" is not a usual repository for storing a large amount of cash.

*See $242,484.00*, 389 F.3d at 1162 ("[a] common sense reality of everyday life is that

legitimate businesses do not transport large quantities of cash rubber-banded into

bundles and stuffed into packages").  Moreover, such material, largely impermeable

to gas, "is commonly used to conceal the smell of drugs and avoid detection by drug dogs." *Currency, U.S. $42,500.00*, 283 F.3d at 982. *Accord $242,484.00*, 389 F.3d at 1162 ("Wrapping cash in cellophane-type material is a technique known to be used by drug dealers to prevent discovery by drug-sniffing dogs."). *See also United States v. $129,727 U.S. Currency*, 129 F.3d 486, 490 (9th Cir. 1997) (connecting money wrapped in fabric softener sheets and plastic wrap with drug activity).   In accordance with Tenth Circuit precedent, the Court gives significant weight to the manner in which the currency was packaged. *See $252,300.00 in U.S. Currency*, 484 F.3d at 1275 (stating that the currency's packaging – "bundled in stacks held by rubber bands and wrapped in cellophane" – "must be given significant probative value"); *$21,055.00 in U.S. Currency*, 778 F. Supp. 2d at 1104 ("Transporting rubber-banded cash wrapped in cellophane shall be given significant probative value by a court.").   Based on the large amount of currency, as well as the way in which it was packaged, the Court determines it is more likely than not that Defendant $13,000 came from drug trafficking.

Accordingly, the Government argues, and the Court agrees, that "the burden then shifts" to Medina to come forth with "sufficient evidence in specific, factual form" to show that the currency is not subject to forfeiture. *See Bacchus Indus.*, 939 F.2d at 891.   Medina argues that it is improper for "the government . . . to transfer the burden of proof." (*See* Doc. # 55 at 3.)   But as the cases cited above indicate, when a movant meets its summary judgment burden, as the Government has here, the non-movant "must demonstrate that there is a genuine factual dispute with regard to some element that the moving party is obligated to prove." *In re Ribozyme Pharm., Inc. Sec. Litig.*,

209 F. Supp. 2d at 1111.  Thus, the burden shifts to Medina.  *See, e.g.*, *United States v. $433,980 in U.S. Currency*, 473 F. Supp. 2d 685, 691 (E.D.N.C. 2007) (finding that the government met its summary-judgment burden and stating, "The burden thus shifts to [claimant] Rodriguez who must come forth with some affirmative evidence that the defendant currency is not subject to forfeiture as proceeds of a drug transaction.").

As mentioned previously, Medina averred that she earned, and saved, the currency as wages from her work.  (Doc. # 55-1.)  However, her affidavit is conclusory and self-serving, and therefore unpersuasive.  *See, e.g.*, *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002) ("We do not consider 'conclusory and self-serving affidavits.'" (citation omitted)); Moore's Federal Practice § 56.41[1][c] ("Merely restating a pleading, submitting new pleadings, or making bald assertions in a legal memorandum, or even in an affidavit, will not enable the nonmovant to withstand a properly supported summary judgment motion.").  Medina has provided no documentation – *e.g.*, pay stubs, tax returns, an affidavit from her employer or a coworker, etc. – to support her conclusory assertions.  As such, her affidavit, without more, is insufficient to establish a genuine dispute of material fact.  *$21,055.00 in U.S. Currency*, 778 F. Supp. 2d at 1102-03 ("Nor is a conclusory, self-serving affidavit by a claimant sufficient to create a genuine issue of material fact regarding the source of money without corroborating documentation.").

Accordingly, because Medina offers only her own conclusory assertion that she earned Defendant $13,000, she fails to meet her burden of showing that the currency is not subject to forfeiture.  Thus, the Government's Motion (Doc. # 51) will be granted.

## B.   MIER-CHACON'S CLAIM TO DEFENDANT DODGE RAM

The Government next contends that Defendant Dodge Ram is also "subject to forfeiture by a preponderance of the evidence" because Resendiz Mier purchased it "with drug proceeds." (Doc. # 50 at 2.) The Government further asserts that Mier-Chacon "cannot meet the standard to establish innocent ownership of defendant Dodge Ram."[4] (*Id.*) For the following reasons, the Court agrees with the Government's position.[5]

### 1.   Whether Defendant Dodge Ram is Subject to Forfeiture

The Government asserts that, during the course of CSPD's investigation, a Confidential Source ("CS") saw Resendiz Mier selling cocaine to one of the CS's friends.[6] (Doc. # 50 at 3.) In his Amended Answer, Mier-Chacon asserts that he is "without information sufficient to admit or deny this allegation." (Doc. # 59 at 2.) In his

---

[4] As already mentioned, the Court accepted the Amended Answer (Doc. # 59), which Mier-Chacon submitted after the Government had filed its Motion for Summary Judgment. (*See* Doc. # 69.) The Amended Answer asserted the "innocent owner" affirmative defense. (Doc. # 59 at 3.) Accordingly, the Government's assertion that "Mier-Chacon is barred from using the innocent owner defense because he did not affirmatively plead this defense" is moot. Thus, the Court will address the affirmative defense on the merits.

[5] Because 21 U.S.C. § 881(a)(6) covers "[a]ll moneys . . . or other things of value" including, as here, an automobile, the Court will not restate the governing law set forth above, which is as applicable to Defendant Dodge Ram as it was to Defendant $13,000.

[6] This assertion was first made, under oath, in the Verified Complaint. (Doc. # 1 at 3.) "A court may treat a verified complaint as an affidavit for summary judgment purposes if the complaint, as verified, bears all of the necessary characteristics of an affidavit: if the allegations therein are made on personal knowledge, set forth facts that would be admissible in evidence, affirmatively show the affiant's competence to testify on the matters therein, and are not conclusory." *Johnstown Feed & Seed, Inc. v. Cont'l W. Ins. Co.*, 641 F. Supp. 2d 1167, 1175 n.3 (D. Colo. 2009); *see also* Fed. R. Civ. P. 56(c)(4). Mier-Chacon does not dispute, and the Court finds, that the Government's Verified Complaint bears the necessary characteristics of an affidavit; thus, the Court will treat it as such.

Verified Response (Doc. # 56), Mier-Chacon fails to address the Government's

assertion.  Accordingly, there is no genuine dispute as to this fact.  *See, e.g.*, *Clifton v.*

*Craig*, 924 F.2d 182, 183 (10th Cir. 1991) (at summary judgment stage, non-movant

may not rely on "mere allegations or denials in pleadings" to establish that a factual

dispute is genuine).[7]  Similarly, the Government avers that, "throughout the entirety of

the investigation, . . . Francisco [Resendiz Mier] was the only individual observed by law

enforcement to be driving defendant Dodge Ram."  (Doc. # 1 at 5-6.)  Mier-Chacon

again asserts that he is "without information sufficient to admit or deny the allegation

. . . ."  (Doc. # 59 at 3.)[8]  Accordingly, and for the reasons previously stated, no genuine

dispute exists as to this fact.  Further, the Government asserts that Resendiz Mier

lacked a legitimate source of income (Doc. # 50 at 12-13) and that there is "no wage

information available from the Colorado Department of Labor" for him (Doc. # 1 at 5).

Based on these facts, the Court determines that the Government has met its burden of

demonstrating by a preponderance of the evidence that Defendant Dodge Ram was

purchased with drug proceeds.[9]  Therefore, the burden shifts to Mier-Chacon to come

---

[7] In any event, Mier-Chacon does not dispute that Resendiz Mier is a convicted drug dealer.
(*See* Doc. # 56 at 3.)

[8] Mier-Chacon also, and inexplicably, asserts that "[t]he government does not allege that its
agents ever saw Francisco [Resendiz Mier] with the [Dodge Ram] vehicle."  (Doc. # 56 at 5.)
As indicated in the text above, however, the Government avers almost the exact opposite: that
Resendiz Mier was the only individual seen with the Dodge Ram.

[9] Because the Government has met its burden with the evidence previously discussed, the
Court need not address the Government's assertion that Resendiz Mier's alleged statements
at the time of his arrest further demonstrate that he purchased Defendant Dodge Ram with drug
proceeds.

forth with "sufficient evidence in specific, factual form" to show that the Dodge Ram is

not subject to forfeiture.  *See Bacchus Indus., Inc.*, 939 F.2d at 891.  He fails to do so.

Instead, Mier-Chacon merely asserts that "[t]he government offers no evidence

that Francisco [Resendiz Mier] had no legitimate income," and he also references

his deposition (Doc. # 50-2 at 4), in which he claimed that Resendiz Mier had been

employed "buying cars."  (Doc. # 56 at 4.)  Neither response is persuasive.  As to the

first assertion, Mier-Chacon is factually incorrect.  The Government did offer evidence

that Resendiz Mier had no legitimate income by averring that there is "no wage

information available from the Colorado Department of Labor" for him.  (Doc. # 1 at 5.)

Regardless, the Court agrees with the Government that Mier-Chacon's assertion, which

appears to be aimed at the Government's burden of proof, misses the point.  As the

Government asserts, it is not required to "prove a lack of legitimate income by proffering

every possible source of legitimate income and then demonstrating that it did not exist."

(Doc. # 74 at 6.)  Rather, the Government's burden, which it has satisfied, is to demon-

strate that the Dodge Ram is subject to forfeiture by a preponderance of the evidence.

Further, Mier-Chacon's reliance on his deposition testimony is unavailing.

Despite averring that Resendiz Mier "worked[,]" Mier-Chacon admitted that he did not

know where Resendiz Mier worked and, instead, suggested that he had been buying

and selling cars on his own.  (Doc. # 56 at 4-5.)  Such an unsubstantiated statement

is insufficient to establish a genuine dispute of material fact.  *See $21,055.00 in U.S.

Currency*, 778 F. Supp. 2d at 1102-03; *United States v. Parcels of Land*, 903 F.2d

36, 40-42 (1st Cir. 1990) (affirming district court's grant of summary judgment for

government and concluding that property at issue was traceable to drug trafficking based on "scant evidence in the record of any 'substantial' sources of legitimate income" for property owner).  Mier-Chacon did not produce any corroborating documentation to support his assertion.

Accordingly, Mier-Chacon has failed to rebut the Government's evidence that Resendiz Mier did not have a legitimate source of income.  Because Mier-Chacon has not come forth with any specific evidence to show that the Dodge Ram is not subject to forfeiture, the Court turns to his assertion of innocent ownership.

      2.   <u>Whether Mier-Chacon is an Innocent Owner</u>

Mier-Chacon contends that he is an "innocent owner[] within the meaning of 18 U.S.C. § 983(d)" because his "property interest[] existed at the time the alleged illegal conduct giving rise to forfeiture took place" and he "did not know of the conduct giving rise to forfeiture."  (Doc. # 59 at 3.)  However, because Mier-Chacon does not qualify as an "owner" under the statute, the Court disagrees.

Under § 983(d), "[a]n innocent owner's interest in property shall not be forfeited under any civil forfeiture statute.  The claimant shall have the burden of proving that the claimant is an innocent owner by a preponderance of the evidence."  *See United States v. 16328 S. 43rd E. Ave., Bixby, Tulsa Cnty., Okla.*, 275 F.3d 1281, 1284-85 (10th Cir. 2002) ("Because the innocent owner defense is an affirmative defense, it is not incumbent upon the government to prove that the owner had knowledge of the illegal activity.").  "With respect to a property interest in existence at the time the illegal conduct giving rise to forfeiture took place, the term 'innocent owner' means an owner who . . .

did not know of the conduct giving rise to forfeiture . . . ."  18 U.S.C. § 983(d)(2)(A)(i).

However, the term "owner" does not include "a nominee who exercises no dominion

or control over the property."  18 U.S.C. § 983(d)(6)(B)(iii).

In the instant case, no dispute exists as to the Government's assertion that

Resendiz Mier and Mier-Chacon are cousins (Doc. # 50 at 3), or that both men are

listed as owners on the Dodge Ram's Certificate of Title, which shows the purchase

date as July 30, 2009 (Doc. # 50-4).[10]  In his Discovery Responses, Mier-Chacon

stated, "I bought the [Dodge Ram] vehicle with cash savings and the trade of two cars.

The vehicle was bought in or near 2009.  I, Victor, cannot remember the name of the

seller.  I paid $10,000 plus the trade value of two cars for a total price of $19,000."

(Doc. # 50-3 at 6.)  However, during Mier-Chacon's later, June 8, 2011 deposition,

he stated that the Dodge Ram belonged to Resendiz Mier.  (Doc. # 50-2 at 5.)

In explaining what he meant, the following exchange took place:

| | |
|---|---|
| Government: | "Tell me how you purchased the Dodge [Ram]." |
| Mier-Chacon: | "A '95 Nissan and a '98 Tahoe I exchanged for it." |
| [. . .] | |
| Government: | "You gave those to who?" |
| Mier-Chacon: | "Francisco [Resendiz Mier]." |

[10]  The copy of the Certificate of Title submitted by the Government was, in some places, unreadable – a recurring problem, unfortunately, with the Government's exhibits in this case. (*See* Docs. ## 51-5, 51-6, and 51–8–51-10.)  Fortunately for the Government, however, none of those exhibits were necessary for the Court's decision on the Government's motions.

| Government: | "You gave those to Francisco in exchange for the Dodge?" |
|---|---|
| Mier-Chacon: | "Well, yes, with some money as well." |
| Government: | "How much money?" |
| Mier-Chacon: | "About $5,000." |

(*Id.* at 6-7.)[11]

He further testified that he bought the '98 Tahoe in 2009 and the '95 Nissan in 2010. (*Id.* at 8.)  When asked how he could have purchased the Dodge Ram in 2009, as indicated on the Certificate of Title, by exchanging a Nissan that he said was purchased in 2010, he responded, "I first gave [Resendiz Mier] the Tahoe.  Then I gave him some money.  And then I have him the Nissan because I didn't have any more money to give him . . . ." (*Id.* at 10.)  Mier-Chacon added that he received title before he had finished purchasing the Dodge Ram from Resendiz Mier.  (*Id.* at 10, 25.)

Mier-Chacon also averred that he drove the Dodge Ram "[f]or two months – on and off" but that the vehicle was kept at Resendiz Mier's residence.  (*Id.* at 12, 15.)  When asked about surveillance having observed Resendiz Mier, and not Mier-Chacon, driving the Dodge Ram, Mier-Chacon stated, "I don't know what you want me to say about that." (*Id.* at 13.)  He then added that he "had come to an agreement" with Resendiz Mier: "when I got up to giving him or paying him . . . up to 75 percent of the

---

[11]  Mier-Chacon testified that he had no information regarding from whom he purchased the Nissan or Tahoe. (Doc. # 50-2 at 11.)  During his Second Discovery Responses, he stated that he could not find any documentation—such as vehicle identification numbers, title, registration, or proof of insurance—to substantiate the trade-in of the Nissan and the Tahoe for the Dodge Ram. (Doc. # 50-8 at 2.)  Nor was he able to provide documentation to substantiate the $5,000 payment. (*See* Doc. # 50-2 at 11.)  In fact, Mier-Chacon affirmed that he lacked any documentation to demonstrate that he purchased the Dodge Ram from Resendiz Mier. (*Id.* at 9.)

vehicle[,] then I would be in full control."  (*Id.* at 15.)  He explained that at the time the

Dodge Ram was seized, he still owed Resendiz Mier:

| | |
|---|---|
| Mier-Chacon: | "Yes, I paid cash [$]5,000, the two cars, and I still was owing him the other –" |
| Government: | "The other five?" |
| Mier-Chacon: | "It could be [$]5,000 – or maybe a little less or maybe I was going to give him that Expedition or the Mercury[,]" which were two other vehicles Mier-Chacon had previously testified to owning. |

(*Id.* at 24-25; *see also id.* at 6.)  He affirmed that he did not have control of the Dodge

Ram until shortly before Resendiz Mier's arrest on March 17, 2010.  (*Id.* at 24.)

However, Mier-Chacon does not dispute that Resendiz Mier was in possession of

Defendant Dodge Ram when the CSPD seized it.  When asked to explain why Resendiz

Mier had the Dodge Ram at the time of his arrest, if Mier-Chacon then had control of it,

Mier-Chacon could not explain.  (*See id.* at 14.)

Further, the Government asserts, and Mier-Chacon does not deny, that as of

June 3, 2011, he was registered as co-owner of sixteen vehicles.  (Doc. # 50 at 8.)

During Mier-Chacon's deposition, the following dialogue took place on this topic:

| | |
|---|---|
| Government: | "Sir, so as of June 3rd, the State of Colorado lists you as the registered owner . . . on 16 vehicles –" |
| Mier-Chacon: | "That's June 3rd this year?" |
| Government: | "Right.  Last week.  Can you explain that, sir? Why you're listed as the registered owner?" |

| | |
|---|---|
| Mier-Chacon: | "I don't know.  When I get these cars and then I sell them, I do the title.  I sign off on the title, and that's all I know." |
| Government: | "On all of these individuals who are on title with you, none of them – we could not find a single person who had a valid driver's license." |
| Counsel to Mier-Chacon: | "There's no question." |
| Government: | "So my question to you, sir, is the registration . . . going into your name because you have a valid driver's license, and all of these people are paying you to register their vehicles, correct?" |
| Counsel to Mier-Chacon: | "We're not going to answer that question. There's a Fifth Amendment problem, but the relevance is also questionable." |
| Government: | "Well, the relevance here is, Mr. Mier-Chacon, these drug dealers are having you register their vehicles so that when the officials seize their vehicles you can come in like you are today and claim half of that vehicle; isn't that correct?" |
| Counsel to Mier-Chacon: | "We're not going to answer that question." |

(Doc. # 50-2 at 20-21.)  When asked whether he was the owner of a 1998 Dodge Sedan, for which the Government asserts he is registered as a co-owner, Mier-Chacon answered, "I don't remember."  (*Id.* at 21-22.)  He also testified that he had never lived at six of the ten addresses associated with the sixteen vehicles registered to him.  (Doc. ## 50-2 at 20 and 74-1.)

As an initial matter, the Government asserts, Mier-Chacon does not dispute, and the Court agrees that § 983(d)(2)(A), under which Mier-Chacon raises his innocent

owner defense, is inapplicable here.  Mier-Chacon's asserted interest in Defendant Dodge Ram fails because the Government met its burden of showing that Resendiz Mier purchased the vehicle with proceeds from drug trafficking.  *See, e.g.*, *United States v. Hooper*, 229 F.3d 818, 822 (9th Cir. 2000) (under criminal forfeiture statute, interest cannot be asserted as pre-existing owner to criminal proceeds because such proceeds are necessarily acquired after the offense giving rise to the forfeiture).  *See also United States v. Real Prop. Located at 148 Maunalanikai Place in Honolulu, Hawaii*, No. 07-00049, 2008 WL 3166799, at *9-10 (D. Hawaii Aug. 6, 2008) (unpublished) (applying reasoning of *Hooper* to § 983(d)(2)(A), and denying claim to property that claimant's wife purchased with drug trafficking proceeds).  Nonetheless, even if § 983(d)(2)(A) was applicable, Mier-Chacon's defense would fail because he did not exercise sufficient dominion or control over the property.  *See* 18 U.S.C. § 983(d)(6)(B)(iii).

Under § 983(d)(6)(B), the "degree, quality[,] and genuineness of dominion or control" that a claimant exercised over the item in question must be addressed.  *United States v. One 1990 Beechcraft 1900 C Twin Engine Turbo-Prop Aircraft*, 659 F. Supp. 2d 1260, 1268 (S.D. Fla. 2009).  "If the degree of dominion or control is small, or if it is merely a cover for the control exercised by the true owner, it is tantamount to no dominion or control at all and divests the claimant of the status of owner."  *Id.* at 1268-69 (collecting cases where ownership test not met).

In the instant case, other than the Certificate of Title, which lists Mier-Chacon as an owner, the indicia of ownership overwhelmingly indicates that Mier-Chacon was a nominee who did not exercise dominion or control over the Dodge Ram.  Among other

facts, the Court finds the following to be persuasive evidence of Mier-Chacon's role as mere nominee:

- Mier-Chacon's statement that the Dodge Ram belonged to Resendiz Mier (Doc. # 50-2 at 5);

- the Dodge Ram was kept at Resendiz Mier's residence (*id.* at 15);

- Mier-Chacon's inability to provide documentation to substantiate the cash payment to Resendiz-Mier (*See id.* at 11);

- the further affirmation by Mier-Chacon that he had no documentation at all to demonstrate having purchased the Dodge Ram (*id.* at 9);

- Mier-Chacon's inability to explain why surveillance had only seen Resendiz Mier driving the vehicle (*id.* at 13);

- the statement by Mier-Chacon that he only got control of the Dodge Ram shortly before Resendiz Mier's arrest (*id.* at 24); and

- that the vehicle was in Resendiz Mier's possession when he was arrested.

Further, regarding the Certificate of Title, the Court infers from Mier-Chacon's answers to the Government's questions about being titled on sixteen vehicles, that his statements would not have been favorable to him.  *See United States v. Two Parcels of Real Prop. Located in Russell Cnty., Ala.*, 92 F.3d 1123, 1129 (11th Cir. 1996) (so long as the claimants are not also defendants in the underlying criminal case, "the trier of fact may take an adverse inference against the parties to a civil action refusing to testify on Fifth Amendment grounds"); *United States v. Nine Thousand Six Hundred Thirty Dollars*

*($9,630.00) in U.S. Currency*, No. 2:05-cv-00334, 2007 WL 2572199, at * 4 (D. Utah

Aug. 31, 2007) (unreported) (similar).

Moreover, Mier-Chacon's statements, primarily those made during his deposition,

contained several inconsistencies and alternating explanations for his alleged ownership

of the Dodge Ram.  *$242,484.00*, 389 F.3d at 1164 (in affirming district court's grant

of government's summary judgment motion in currency forfeiture case, the court

highlighted that claimant's explanations were "inconsistent at their core" and involved a

"total lack of any documentation to support them").  Although Mier-Chacon first stated

that he could not "remember the name of the [Dodge Ram's] seller" (Doc. # 50-3 at 6),

he later testified that he bought the vehicle from his own cousin, Resendiz Mier (Doc.

# 50-2 at 5).  Mier-Chacon also gave conflicting accounts of the payment terms for the

vehicle.  He first stated that he traded in two cars and paid $10,000 for the Dodge Ram.

(Doc. # 50-3 at 6.)  But he later averred that he paid "[a]bout $5,000" (Doc. # 50-2 at 7),

although he revised his statement, saying he still owed Resendiz Mier $5,000, and he

further added that perhaps the future payment would have been made by giving

Resendiz Mier one of the two other vehicles he owned (*id.* at 24-25).  Mier-Chacon also

gave inconsistent and alternating explanations for when he took title to the vehicle, first

claiming that he bought it "in or near 2009" (Doc. # 50-3 at 6), then asserting that he

purchased it over time when asked how he could have bought it in 2009 by trading in a

car that he did not own until 2010 (Doc. # 50-2 at 10).  Ultimately, Mier-Chacon asserted

that he was still in the process of purchasing the Dodge Ram and only gained control of

it shortly before Resendiz Mier was apprehended.  (*Id.* at 24.)  These conflicting and

evolving explanations are insufficient to demonstrate that Mier-Chacon was more than a nominee without dominion or control over Defendant Dodge Ram.

Accordingly, because under 18 U.S.C. § 983(d)(6)(B)(iii) Mier-Chacon does not qualify as an owner, the Court need not address his assertion that he "did not know of the conduct giving rise to forfeiture" (Doc. # 59 at 3).  Even if innocent of knowledge regarding Resendiz Mier's drug trafficking, Mier-Chacon fails to demonstrate that a genuine dispute exists as to his role of mere nominee over Defendant Dodge Ram.

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS that the Government's Motions for Summary Judgment as to Maria Medina's claim to Defendants $13,000.00 and Yukon (Doc. # 51) and Victor Mier-Chacon's claim to Defendant Dodge Ram (Doc. # 50) are GRANTED.  It is

FURTHER ORDERED that by this Order the Defendants are deemed forfeited to the United States.  It is

FURTHER ORDERED that the Court's Order (Doc. # 81) directing counsel for the parties to call chambers to set a new trial date is VACATED in light of the instant Order.

DATED:  March   13  , 2012

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge